UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN NATIONAL MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>EXTREME DESIGN BUILDERS, INC., et al.,<br><br>Defendants. | Case No.  23-cv-02727-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Docket No. 66 |

Plaintiff is Western National Mutual Insurance Co. ("Western"), and Defendants are Extreme Design Builders, Inc. (d/b/a Dwell Construction) (hereinafter "Dwell") and Ibrahim Yilmaz.  Dwell is a contractor or construction company; Mr. Yilmaz owns or has an ownership interest in Dwell.  Western and Defendants have a contractual relationship.  Western issued a Contractor's Bond for Dwell so that it could be a licensed contractor in California, and, at or about the same time, Western and Defendants entered into an indemnification agreement.  Under that agreement, Defendants had to reimburse Western for any Loss it suffered in connection with the Contractor's Bond.  Western filed suit against Defendants on the basis that they failed to comply with their indemnification obligations.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Now pending before the Court is Western's motion for summary judgment. Western seeks summary judgment on one of four claims it has asserted against both Defendants: specifically, the claim for breach of contract (*i.e.*, the indemnification agreement). Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and the supplemental filings requested by the Court, the Court hereby **DENIES** Western's motion for summary judgment.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The evidence submitted by the parties in conjunction with the summary judgment papers reflects as follows.

### A.    Construction Project

In or about April 2017, Dwell entered into a construction contract with two individuals, Ann Koo and Thomas Tam (collectively, the "Homeowners"). The contract price was $675,000. *See* Buckley Decl., Ex. C (Construction Contract, attached to *Koo* complaint).

### B.    Contractor's Bond

"Pursuant to Business and Professions Code section 7071.6, in order to do business in the State of California as a licensed contractor, a contractor must file a contractor's bond in the sum of approximately $15,000.00." *Sauers Lopez Constr. v. H.J. Vast*, 21SMCV01469, 2022 Cal. Super. LEXIS 23341, at *4 (L.A. Sup. Ct. Apr. 5, 2022) (emphasis added); *see also* Cal. Bus. & Prof. Code § 7071.6(a) (2017) ("The board shall require as a condition precedent to the issuance . . . of a license, that the applicant or licensee file or have on file a contractor's bond in the sum of fifteen thousand dollars ($15,000)."). A contractor's bond is for the benefit of, *inter alia*, (1) "[a] homeowner contracting for home improvement upon the homeowner's personal family residence damaged as a result of a violation of this chapter[1] by the licensee" and (2) "[a] property owner contracting for the construction of a single-family dwelling who is damaged as a result of a violation of this chapter by the licensee." Cal. Bus. & Prof. Code § 7071.5(a), (c).

/ / /

---

[1] "This chapter" refers to Chapter 9, titled "Contractors."

United States District Court
Northern District of California

In or about August 2017, Western (as surety) issued a Contractor's Bond for Dwell in the penal sum of $15,000. The Contractor's Bond covered the period August 2017 to August 2022. *See* Buckley Decl., Ex. B (Contractor's Bond). The Bond stated, on its face, that "[t]he limitation of liability of the surety and the conditions of the bond are as set forth in Sections 7071.5 and 7071.6 . . . and any person claiming against said bond may bring an action in proper court on this bond for the amount of the damage he may suffer as a result of such acts or omissions by the Principal [*i.e.*, Dwell] . . . ." Buckley Decl., Ex. B (Contractor's Bond ¶ 3).

C.    Indemnification Agreement

In conjunction with Western's issuance of the Contractor's Bond to Dwell, Western, Dwell, and Mr. Yilmaz entered into an indemnification agreement. *See* Buckley Decl., Ex. A (Indemnification Agreement). Western maintains, and Defendants do not dispute, that the indemnification agreement induced Western "to issue a Contractor's License Bond on behalf of [Dwell] to obtain its California Contractor's License." Buckley Decl. ¶ 4.

The indemnification agreement includes the following provisions:

- "I request that Western . . . execute a Bond . . . for the individual, company or entity identified below ('Principal')." Here, the company identified below was Dwell.

- "Bond means . . . any surety bond, undertaking, or other express or implied obligation of guaranty or suretyship, signed or committed to by [Western] at the request of Principal [Dwell] . . . on, before, or after the date of this agreement pursuant to which [Western] is or may be made liable for Loss, whether or not Principal [Dwell] is also liable."

- "Loss means any payment or expense either incurred or anticipated by [Western] in connection with this Bond or this agreement, including but not limited to: payment of bond proceeds or any other expense in connection with claims, potential claims, or demands; claims fees charge of $120 for each claim and penalties, interest, court costs, collection agency fees; costs related to taking, protecting, realizing upon, or releasing collateral; and attorney's fees (including but not limited to those incurred

3

in defense of bond claims or pursuing any rights of indemnification or subrogation and in obtaining and enforcing any judgment arising from those rights).”

- “I make the following promises so that [Western] will execute a Bond . . . .”
- “I, individually, and jointly and severally with Principal [Dwell] . . . agree to hold [Western] harmless from all Loss and to pay back or reimburse [Western] for all Loss.”
- “I agree that [Western] has the **exclusive right** to decide whether to pay, compromise, defend, or appeal any claim against a Bond” (emphasis added).
- “I agree that I have READ AND UNDERSTOOD this agreement, that I am signing as a PERSONAL INDEMNITOR . . . and in my CORPORATE, PARTNERSHIP, or LLC CAPACITY, if any.”
- “If [a] corporate officer or LLC member or manager signs [the indemnity agreement] indicating his or her LLC capacity, it is nonetheless specifically understood that such individual is signing in his or her corporate capacity and as an individually liable indemnitor.”

Buckley Decl., Ex. A (indemnification agreement).

In their papers, Defendants acknowledge the provision giving Western the exclusive right to decide whether to pay or defend a claim against the Contractor’s Bond. However, they contend that, under the implied covenant of good faith and fair dealing, Western did not have unfettered discretion to exercise that right.

D.　　Dispute with Homeowners

At some point, the Homeowners and Dwell had a dispute. In November 2019, Ms. Koo (one of the Homeowners) made a claim on the Contractor’s Bond to Western, alleging that Dwell “lacked worker’s compensation insurance and as such was de facto unlicensed in violation of California Business and Professions Code Section 7000 et seq.” Buckley Decl. ¶ 6.

Shortly thereafter, in December 2019, Ms. Koo filed a lawsuit in state court against Dwell and Western (as well as another surety, State National Insurance Company, Inc.). According to Ms. Koo, Dwell “overbilled on the [construction] project, lacked workers’ compensation

4

insurance, was unlicensed, and [was] in breach of the construction contract on [her] home due to a lack of workers' compensation." [2]  Buckley Decl. ¶ 7.  At the time of suit, Ms. Koo claimed that she had paid Dwell more than $350,000 in conjunction with the construction project.  *See* Buckley Decl., Ex. C (*Koo* Compl. ¶ 15).  As for Western, it was named as a defendant in only one cause of action, *i.e.*, for recovery of license bond.  *See* Buckley Decl., Ex. C (*Koo* Compl. ¶ 78).  Ms. Koo alleged that "a surety on a license bond is liable for losses that are 'the result of a violation of this chapter [the Contractor's State License Law] by the licensee.'"  Buckley Decl., Ex. C (*Koo* Compl. ¶ 80).  Ms. Koo alleged that Dwell (the licensee) violated the Contractor's State License Law in multiple ways – *e.g.*, by abandoning work, by failing to complete work in a proper and timely manner, by failing to maintain an active and valid contractor's license, by charging and receiving payments greater than those authorized by law, etc.  *See* Buckley Decl., Ex. C (*Koo* Compl. ¶ 80).

According to Defendants herein, Ms. Koo's complaint lacked merit because Dwell

> was exempt from workers' compensation insurance requirements because it had no employees, [and] Business & Professions Code, section 7125 (applicable at the time) . . . allowed for contractors with no employees to be exempt from the worker's compensation requirements.  Prior to 2023, contractors without employees were

---

[2] A copy of the *Koo* complaint can be found at Exhibit C attached to the Buckley Declaration.

With respect to Dwell, the main allegations in the *Koo* complaint are as follows:

- Dwell failed to maintain workers' compensation coverage, which by operation of law resulted in the automatic suspension of its license.  *See, e.g.*, Buckley Decl., Ex. C (*Koo* Compl. ¶¶ 13, 16).
- Dwell failed to maintain an active contractor's license.  *See, e.g.*, Buckley Decl., Ex. C (*Koo* Compl. ¶ 32(b)).
- Dwell illegally required Ms. Koo to make advance payments for work not yet performed.  *See, e.g.*, Buckley Decl., Ex. C (*Koo* Compl. ¶ 23).
- Dwell failed to perform in a reasonable and timely manner, "including by procuring and maintaining the building permit for the Project, and obtaining timely extensions or renewals for the permit."  Buckley Decl., Ex. C (*Koo* Compl. ¶ 32(f)).
- Dwell failed to perform as required by the contract and accepted payment of more than $350,000 from Ms. Koo without providing goods or services worth that sum.  *See, e.g.*, Buckley Decl., Ex. C (*Koo* Compl. ¶¶ 40(a)-(b)), 62(b).
- Dwell performed unnecessary work.  *See, e.g.*, Buckley Decl., Ex. C (*Koo* Compl. ¶ 40(d)).
- Dwell negligently performed its work – *e.g.*, failing to properly conduct demolition activities and protecting the home from inclement weather conditions.  *See, e.g.*, Buckley Decl., Ex. C (*Koo* Compl. ¶ 74).

United States District Court
Northern District of California

not required to maintain worker's compensation insurance. In this case, [Dwell] only utilized subcontractors, who carried their own worker's compensation insurance. Additionally, as provided on the CSLB website, [Dwell] is shown to be exempt from the worker's compensation insurance requirement from January 18, 2017, until December 10, 2018.

Opp'n at 3; *see also* Yilmaz Decl., Ex. C (Senate Bill 216, approved by governor in 2022) (noting that, under then-existing law, a licensed contractor must "have on file at all times with the board a current and valid Certificate of Workers' Compensation Insurance or Certification of Self-Insurance, or . . . file a certificate of exemption certifying that they have no employees and are not required to obtain or maintain workers' compensation insurance"); Yilmaz Decl., Ex. D (CSLB website) (showing that Dwell was exempt from the worker's compensation insurance requirement from January 18, 2017, through December 10, 2018); Yilmaz Decl. ¶ 8 (testifying that Dwell was properly licensed during the time it worked on the Koo construction project); Yilmaz Decl. ¶ 6 (testifying that Dwell used only "subcontractors who carried their own worker's compensation insurance, for the work completed at Koo's properties"). Defendants, however, have addressed only the workers' compensation issue; they have not addressed the other matters raised in the *Koo* complaint.

In May 2020, in response to the *Koo* complaint, Dwell filed a cross-complaint, asserting breach of contract, foreclosure of a mechanic's lien, and account stated. *See* Opp'n at 2-3. Dwell sought damages worth more than $86,000 for the contract claim.[3] *See* Opp'n at 3.

E.    Settlement with Ms. Koo

In January 2023, Ms. Koo, Western, and Dwell entered into a settlement agreement with respect to the underlying state suit.[4] *See* Oertel Reply Decl. ¶¶ 3-4 & Ex. B (settlement agreement

---

[3] A copy of the cross-complaint can be round at Exhibit B to the Yilmaz Declaration. In the cross-complaint, Dwell alleged that Ms. Koo breached the contract by, *e.g.*, causing a number of delays to the construction project and by failing to pay for work that was completed. *See* Yilmaz Decl., Ex. B (*Koo* Cross-Compl. ¶¶ 9, 18).

[4] There was initially some dispute as to whether Dwell had signed the settlement agreement, specifically, because the settlement agreement that Western provided in conjunction with its opening brief did not bear a signature from Dwell or its counsel. After Western corrected this deficiency in its reply, Defendants conceded that Dwell did sign the settlement agreement. *See* Supp. Yilmaz Decl. ¶ 4 ("After seeing the signed settlement agreement, it appears that I did sign the agreement.").

6

bearing relevant signatures); *see also* Oertel Reply Decl., Ex. A (email from mediator memorializing terms).  The main terms of the settlement agreement were as follows.

- Dwell would pay Ms. Koo $175,000 through its liability insurance carrier, Developers Surety and Indemnity Company.  *See* Compl., Ex. D (Sett. Agmt. ¶ 2.2).

- In addition, Dwell itself would pay Ms. Koo $15,000.  *See* Compl., Ex. D (Sett. Agmt. ¶ 2.2).

- Finally, Western would pay Ms. Koo $85,000.  See Compl., Ex. D (Sett. Agmt. ¶ 2.2).

- The parties would "bear their own costs, expenses and attorneys' fees arising out of or any connected with the matters released herein."  Compl., Ex. D (Sett. Agmt. ¶ 2.4).  But the settlement agreement specifically noted that it did not "affect Western National's indemnity claims against DWELL and the individual indemnitors."  Compl., Ex. D (Sett. Agmt. ¶ 2.3(a) (adding that Western "specifically reserve[s] its indemnity rights under the Indemnity Agreement, at law and in equity against DWELL and the individual indemnitors under [the Contractor's Bond] and indemnity agreement").

According to Defendants, although Dwell signed off on the settlement agreement, it was "not part of the discussion of settlement except for [its own] portion, which ended up being $15,000."  Supp. Yilmaz Decl. ¶ 12.  In other words, Dwell did not have any insight into why Western agreed to pay $85,000 under the settlement.  *See* Yilmaz Decl. ¶ 10 ("I was never made aware as to why [Western] made a settlement of $83,000 [sic] on behalf of EXTREME . . . .").  Defendants suggest they believed the $15,000 paid by Dwell constituted the amount related to the Contractor's Bond.  *See* Supp. Yilmaz Decl. ¶ 13.

Defendants add that they do not dispute Western paid out $85,000 under the settlement but

---

That a settlement was reached is also confirmed by other evidence.  For example, Defendants admitted that they "provided a check to [Ms.] Koo's attorneys in the amount of $15,000."  Yilmaz Decl. ¶ 9.  Defendants also admitted that Dwell dismissed its cross-complaint in April 2023 and that Ms. Koo dismissed hers in May 2023.  *See* Opp'n at 3.

contend that there is a genuine dispute of fact as to whether Western could, under the indemnification agreement, demand that Defendants pay back that entire sum or whether their liability to Western is limited by the face amount of the bond. Defendants frame the issue as whether Western, "under the good faith and fair dealing obligation that arises under every contract, should have made such a payment" given that (1) Ms. Koo's claims "relating to worker's compensation and licensing had no basis in the facts or the law, [such that] her claims were easy to deny," Opp'n at 4, and that (2) Dwell also had a cross-complaint against Ms. Koo. *See* Opp'n at 5, 7. According to defendants, Western "chose to simply pay money to resolve the matter, without a valid basis for that settlement." Opp'n at 7.

F.      Demand by Western

        In March 2023, Western made a written demand on Defendants (*i.e.*, Dwell and Mr. Yilmaz) to indemnify it and hold it harmless from liability with respect to the Koo suit. Western asked for compensation in the amount of **$97,000**, consisting of the $85,000 that Western paid to Ms. Koo in connection with the settlement agreement plus $12,000 in attorneys' fees and costs to defend the claim against the Contractor's Bond. *See* Buckley Decl., Ex. E (demand)

        Defendants did not reimburse Western, and thus Western initiated the instant action in June 2023. Western has asserted claims for (1) breach of contract, (2) equitable indemnity, (3) statutory indemnity, and (4) specific performance.

        In the pending motion, Western seeks summary judgment on only the claim for breach of contract. The amount of damages sought by Western is now **$236,892.08**. This sum is composed of: "$85,000.00 to settle the Koo Action, $124,864.30 in attorney's fees and costs [both for the *Koo* litigation and this litigation], $1,356.00 in adjuster fees, and $25,671.78 in prejudgment interest." Buckley Decl. ¶ 11.

## II.      DISCUSSION

A.      Legal Standard

        Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is

8

genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.  At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

In the instant case, Western – the plaintiff – is moving for summary judgment.  Where a plaintiff moves for summary judgment on claims that it has brought (*i.e.*, for which it has the burden of proof), it "must prove each element essential of the claims . . . by undisputed facts." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 607 (N.D. Cal. 1992); *cf. Martin v. Alamo Cmty. College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) ("To obtain summary judgment, if the movant bears the burden of proof on an issue . . . , he must establish beyond peradventure *all* of the essential elements . . . to warrant judgment in his favor.") (emphasis in original; internal quotation marks omitted).  Summary judgment is not proper if the plaintiff cannot do so.

B.    Amount Paid by Western to Ms. Koo

The elements of a cause of action for breach of contract are (1) the existence of contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage.  *See Wall Street Network, Ltd. v. N. Y. Times Co.*, 164 Cal.App.4th 1171, 1178 (2008); *see also Four Star Elec., Inc. v. F & H Constr.*, 7 Cal. App. 4th 1375, 1380 (1992) ("An indemnitee seeking to recover on an agreement for indemnification must allege the parties' contractual relationship, the indemnitee's performance of that portion of the contract which gives rise to the indemnification claim, the facts showing a loss within the meaning of the parties' indemnification agreement, and the amount of damages sustained.").

The main question for purposes of the pending summary judgment motion is whether Defendants breached – *i.e.*, did Defendants breach the indemnification agreement when they did not pay Western back for the $85,000 that Western paid to Ms. Koo under the settlement agreement?

According to Western, there was a breach because, under the indemnification agreement,

United States District Court
Northern District of California

Defendants promised to pack Western back for all "Loss" sustained by Western in connection with the Contractor's Bond, and the $85,000 constituted such a Loss. *See* Buckley Decl., Ex. A (Indemnification Agreement) (Dwell agreeing to hold Western harmless from all Loss and to pack back or reimburse Western for all Loss; Loss means any payment or expense incurred in connection with the Bond, including the payment of bond proceeds and attorney's fees). Western emphasizes that, under the indemnification agreement, it had the "**exclusive right** to decide whether to pay, compromise, defend, or appeal any claim against a Bond." Buckley Decl., Ex. A (indemnification agreement) (emphasis added).

### 1.    Implied Covenant of Good Faith and Fair Dealing

Defendants acknowledge Western's "exclusive right" as stated above. They maintain, however, that any discretion Western had to settle pursuant to this provision was not unfettered – specifically, because of the implied covenant of good faith and fair dealing which is inherent in all contracts. In other words, Defendants question is whether Western acted in good faith when it settled its dispute with Ms. Koo for $85,000 (for which it would then seek reimbursement from Defendants under the indemnification agreement) given that the penal sum of the bond was limited to only $15,000.

Western asserts that the Court should not entertain Defendants' good faith argument because (1) Defendants never raised the argument until now (*e.g.*, no affirmative defense was pled and no counterclaim was made) and (2) as a matter of law, the argument is barred. In a supplemental brief filed after the hearing on the summary judgment motion, Western added a new argument that it had not previously raised: (3) that its discretion to settle was, in fact, unfettered.

As to (1), the Court is not without some sympathy for Western, but Defendants may not have raised the argument earlier simply because they did not have counsel. Furthermore, there is no waiver here because Defendants do not need to have a counterclaim to invoke the implied covenant of good faith and fair dealing. In addition, while Defendants are relying on the implied covenant as a defense, the defense does not appear to be an affirmative one for which Defendants bear the burden of proof (*i.e.*, Western has the burden of proving that it performed under the contract).

As for (2), Western relies on a California Supreme Court case to support its contention that Defendants' good faith argument lacks merit. *See Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28 (1999). But contrary to what Western argues, *Cates* is not on point. *Cates* indicates that a **project owner** (here, Ms. Koo) cannot bring a **tort** action against a surety (here, Western) for breach of the implied covenant of good faith and fair dealing "**implied in the performance bond**." *Id.* at 35 (emphasis added); *see also id.* at 46-47 (emphasizing that, in the insurance context, a tort claim for breach of the implied covenant is permissible but is a major departure from traditional principles of contract law; "[t]he question here is whether the exceptional approach thus far reserved for breaches in the insurance policy setting should be extended to breaches in the context of a surety bond given to assure performance on a construction contract"). But *Cates* says nothing about whether a **contractor** (here, Dwell) can rely on the implied covenant as a **defense** to a **contract** claim by the surety for breach of an **indemnification agreement**.

Finally, regarding (3), the Court is not persuaded by Western's new contention that its right to settle was unfettered. "[E]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Wolf v. Walt Disney Pics. & Tel.*, 162 Cal. App. 4th 1107, 1120 (2008) (internal quotation marks omitted). "[T]he implied covenant finds 'particular application in situations where one party is invested with a discretionary power affecting the rights of another.'" *Id.* at 1120-21. If a contract gives discretionary power to one contracting party, but there is ambiguity with respect to that discretionary power, the implied covenant can be used to interpret that discretionary power. *See Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 806 (1995). Furthermore, even if, as a general rule, the implied covenant "will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself," *Wolf*, 162 Cal. App. 4th at 1120, the implied covenant can still be "applied to contradict an express contractual grant of discretion when necessary to protect an agreement which otherwise would be rendered illusory and unenforceable." *Third Story*, 41 Cal. App. 4th at 806; *see also id.* at 808 (stating that "courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision

literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement"). In *Third Story*, the court indicated that a contract would not be considered illusory if there was adequate consideration to support it. *See id.* at 806 (indicating that the implied covenant cannot be used to contravene an express contract term if the contract is unambiguous, the contract is "otherwise supported by adequate consideration, and the implied covenant is not needed to effectuate the parties' expressed desire for a binding agreement"); *see also Cal. Dental Assn. v. Delta Dental of Cal.*, 115 Cal. App. 5th 142, 162 (2025) (stating that "there is no need to look to the discretionary constraints of the implied covenant in order to save the Provider Agreement from being illusory, as it is supported by consideration regardless of Delta's right to unilaterally make changes to the fee structure").

In the case at bar, the parties' indemnification agreement states that Western has the "**exclusive right** to decide whether to pay, compromise, defend, or appeal any claim against a Bond." Buckley Decl., Ex. A (indemnification agreement) (emphasis added). Western contends that this provision in the contract gave it unfettered discretion to settle. But arguably, there is some ambiguity here – *i.e.*, the plain language is not conclusive. The language could be interpreted to mean that Western was simply given the right to make a final decision, not that its decision-making was without any limitations. Such an interpretation would also avoid an absurd result – *e.g.*, where Western could settle a claim against the bond for millions even if the claim lacked any merit and in spite of the penal sum of the bond and then seek 100% reimbursement as indemnification without any regard to Dwell's interests. *See ASP Props. Grp., L.P. v Fard, Inc.*, 133 Cal. App. 4th 1257, 1269 (2005) ("Interpretation of a contract must be fair and reasonable, not leading to absurd conclusions. The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable.") (internal quotation marks omitted).

More important, even if the provision *did* give Western unfettered discretion, the implied covenant can still be "applied to contradict an express contractual grant of discretion when necessary to protect an agreement which otherwise would be rendered illusory and unenforceable." *Third Story*, 41 Cal. App. 4th at 806. Under Western's position, the indemnification agreement would be rendered effectively illusory. *See id.* at 805-06 (indicating

United States District Court
Northern District of California

that a party's promise can be illusory if the party has total discretion over its performance). Western would have the ability to settle a claim against the Bond for any amount – potentially, millions – regardless of the amount of the penal sum underlying the Bond, and Dwell would be responsible for indemnification. And there is no indication that sufficient consideration was given to Defendants in exchange for this unfettered right that could put Dwell in jeopardy without any say or safeguard. The key term of the bond – the stated penal amount – would be illusory. *See Third Story*, 41 Cal. App. 4th at 804-05 (discussing a case in which a bank was given discretion to set nonsufficient fund charges to be paid by the customer; "since the charges were subject to the bank's sole discretion, the contract lacked mutuality and was, in fact, illusory," but the court in the case was able to save an otherwise illusory agreement through the implied covenant).

Accordingly, the Court rejects Western's contention that the implied covenant of good faith and fair dealing should be given no consideration in this case.

2.      Breach of the Implied Covenant

Because the implied covenant is a fair defense raised by Defendants, the question is whether there is a genuine dispute of fact as to whether it was reasonable for Western to settle for $85,000, especially given that the penal sum of the Contractor's Bond was limited to $15,000.

To be clear, the issue here is not whether Western should have paid out $15,000. That payout as a settlement does not seem problematic,[5] and that is true even if Defendants are right that Dwell did not need to have workers' compensation insurance (*i.e.*, that Dwell was exempt).[6] Even if Dwell was exempt from workers' compensation, Ms. Koo's lawsuit was not just about Dwell failing to have worker's compensation insurance. She also asserted, for example, that Dwell improperly had her make payments before it provided any services or materials. She also asserted that Dwell failed to provide services or materials worth the $350,000+ that she paid. Given these circumstances, Western paying out the penal sum of $15,000 would appear to be

---

[5] The Court acknowledges Defendants' position that the $15,000 Dwell paid out under the settlement agreement reflected the value of the Bond.

[6] Western objects to any evidence that Dwell was exempt. The Court need not resolve that objection because it is not material to the instant motion.

reasonable.  The bigger issue is why did Western pay significantly more than the penal sum of $15,000.

In response, Western argues that it could have been held liable for more than just for the penal sum of the bond.  Western asserts, in particular, that it could have been liable for attorneys' fees incurred by Ms. Koo in the state court litigation.  In support, it relies primarily on *Pierce v. Western Surety Co.*, 207 Cal. App. 4th 83 (2012), and *Karton v. Ari Design & Constr., Inc.*, 61 Cal. App. 5th 734 (2021).

As an initial matter, the Court notes that part of *Pierce* actually favors Defendants.  In *Pierce*, the court took note of another case where a subcontractor had sued a contractor who had a construction bond.  In that case, the surety's liability was *limited* to the penal sum of the bond, even though liability extended to the subcontractor's attorneys' fees due to a fee-shifting provision in the contract between the contractor and subcontractor.  *See Pierce*, 207 Cal. App. 4th at 89 (noting that the subcontractor "could recover from the surety the attorney fees provided for in its subcontract so long as the total recovery, including attorney fees, did not exceed the penal sum  of the bond[;] [t]he court noted that *the purpose of the bond is to act as 'security for the covenants of the underlying contract*,'" which included the fee-shifting provision); *see also* Cal. Code Civ. Proc. § 996.470(a) which  provides that, "'notwithstanding any other statute . . . , the aggregate liability of a surety to all persons for all breaches of the condition of the bond is limited to the amount of the bond").

That being said, *Pierce* and *Karton* do recognize that there may be an independent basis for holding a surety liable for attorneys' fees – not because the surety guaranteed the covenants in the underlying contract between the principal and the third party, but rather because a statute provides for fee shifting.  In particular, both *Pierce* and *Karton* take note that, under California Code of Civil Procedure § 1032(b), "a prevailing party is entitled as a matter of right to recover costs in any action or proceeding," Cal. Code Civ. Proc. § 1032(b), and, under § 1033.5(a)(10), attorneys' fees are deemed costs under § 1032 so long as authorized by contract, statute, or law.  *See id.* § 1033.5(a)(10).

/ / /

United States District Court
Northern District of California

14

United States District Court
Northern District of California

Nevertheless, for purposes of summary judgment, there is still a genuine dispute of material fact as to whether it was reasonable for Western to make a settlement that was based in large part on Ms. Koo's attorneys' fees – in particular, fees that had accumulated close to the time of trial. Whether the amount Western contributed to the settlement (expecting complete indemnification back from Defendants) was reasonable and in good faith is a factual issue which cannot be resolved by summary judgment. Defendants maintain there was little merit to Ms. Koo's suit, and there is no conclusive evidence before the Court on the dynamics of the settlement, not only as between Ms. Koo and Dwell, but also among the multiple parties from whom contributions on behalf of Dwell were sought. Moreover, at or near the outset of the case, Western could have extricated itself from the case by immediately settling with Ms. Koo or at least interpleading the penal sum of the Bond ($15,000). Had it taken that action (*i.e.*, instead of agreeing with Dwell to contest her lawsuit), then it could have been absolved for costs, including attorneys' fees, thereafter incurred by Ms. Koo even under a fee-shifting statute.

At the hearing, Western argued that interpleader was not an option for a surety until *Karton* was decided in 2021 (*i.e.*, approximately two years after Ms. Koo initiated her suit). *See Karton*, 61 Cal. App. 5th at 752 (stating that, "[w]hen a surety decides to fight a lawsuit, it can make itself liable for the costs of that litigation in excess of the face value of its bond, as Wesco's [the surety's] own actions demonstrate"; "[i]f Wesco wished to avoid the open-ended costs of litigation, it could have done what it avoided doing here: interplead its $12,500 principal and minimize its liability for litigation costs"). According to Western, before *Karton*, interpleader was not possible because interpleader requires *two* parties laying claim to a fund, and, here, only Ms. Koo laid claim to the $15,000 value of the Bond.

The Court is not persuaded. Decades before *Karton*, the court in *Harris v. Northwestern National Insurance Co.*, 6 Cal. App. 4th 1061 (1992), stated that, "[t]o avoid the costs and risks of litigation, [the surety] could have negotiated settlements of its own liability or used interpleader procedures to deposit the amount of its bond in court." *Id.* at 1065-66. Moreover, Western's suggestion that only Ms. Koo had an interest in the $15,000 value of the Bond elevates form over substance. Had Western put up the $15,000, it is not simply Ms. Koo who would have had an

15

interest in the sum. Dwell might also have had an interest in the sum if it could demonstrate there was no reason for Western to have paid out the money because there was no violation of the construction contract. Even if such claim were weak, that would not preclude utilization of the tool of interpleader.

Western seems to suggest that, even if had settled with Ms. Koo or interpleaded the funds at the outset, Dwell would still have continued its litigation of the *Koo* suit and Western could then be held liable for attorneys' fees incurred by Ms. Koo as a result of Dwell's continued litigation. Here, the reasoning would be: (1) Ms. Koo could get her fees from Dwell because the construction contract she had with Dwell contained a fee-shifting provision[7]; and (2) Western would be accountable for what Dwell owed Ms. Koo because, "[w]here one assumes liability as a surety upon a conditional obligation, his liability is commensurate with that of the principal." Cal. Civ. Code § 2808. But Western does not explain how, once having interpleaded the full amount of the bond, it could have been held liable for more than the penal sum of the Bond for fees and costs incurred *after* the interpleader. To the extent *Pierce* and *Karton* suggest that § 2808 trumps the effective limitation of liability, the Court disagrees. There is insufficient reasoning to establish why Western could be held liable for fees subsequently incurred by Ms. Koo whether under the contract or the statute. Once interpleader was effected, Western would no longer be an operative defendant in the *Koo* case.

Presumably, Western takes the position that *Pierce* and *Karton*, at the very least, exposed it to the *risk* that it could be held accountable for Ms. Koo's attorneys' fees (*i.e.*, even if the Court were to disagree); thus, it was reasonable for it to settle for an amount that exceeded the penal sum of the Bond. While that is not an unfair position for Western to take, that simply underscores why there is a genuine dispute of fact here that cannot be resolved on summary judgment. If the risk was quite high, then settling for a higher amount might be justified. In contrast, if the risk was

---

[7] *See* Buckley Decl., Ex. C (Construction Contract ¶ 12) ("In the event the parties become involved in litigation or arbitration with each other arising out of this Agreement or other performance thereof in which the services of an attorney or other expert are reasonably required, the prevailing party shall be fully compensated for the cost of its participation in such proceeding, including the costs incurred for attorney's fees, expert fees, court fees, filing fees, and any other directly applicable charges.").

relatively low, then settling for an amount significantly more than the penal sum might be unreasonable. The bottom line is that whether Western in good faith settled for $85,000 is a genuine dispute of material fact that precludes summary judgment.

C.      Attorneys' Fees

The analysis above addresses only the amount that Western paid under the alleged settlement agreement – *i.e.*, $85,000. As part of its summary judgment motion, Western is seeking more, including the attorney's fees *it* incurred (1) to defend against Ms. Koo's claim against the Contractor's Bond and (2) to prosecute the instant suit.

As indicated above, fee shifting is provided for in the indemnification agreement between Western and Defendants. The indemnification agreement specifies that Loss to Western can include

> attorney's fees (including but not limited to those incurred in defense of bond claims **or** pursuing any rights of indemnification or subrogation and in obtaining and enforcing any judgment arising from those rights).

Buckley Decl., Ex. A (indemnification agreement) (emphasis added).

In their papers, Defendants do not address the request for attorneys' fees – likely because, if there is a genuine dispute of fact on the $85,000, that creates a genuine dispute of fact as to the reasonableness of fees incurred in prosecuting the indemnification as well. Furthermore, there are genuine disputes of fact as to Western's attorney's fees for other, independent reasons.

(1) In June 2023, when Western made its demand on Dwell, it claimed that it spent $12,000 in attorneys' fees and costs to defend against the Contractor's Bond. *See* Buckley Decl., Ex. E (demand). But Western has not offered any evidence as to whether that $12,000 was reasonable, especially as, apparently, Dwell already had an attorney representing it and Western had tendered its defense to Dwell.

(2) In January 2024, when Western moved for a default judgment, it asked for about $39,600 in fees (including the $12,000 described above). *See* Docket No. 32 (in motion for default judgment filed in January 2024, asking for about $39,600 in fees). But Western has not offered any evidence as to whether the fees spent in this

United States District Court
Northern District of California

17

litigation were reasonable.

(3) In January 2026, when Western filed the pending summary judgment motion, it asserted it had incurred $124,864.30 in attorney's fees and costs (including the $12,000 above). *See* Buckley Decl. ¶ 11. But again, Western has not offered any evidence as to whether the fees spent in this litigation were reasonable (especially taking into account that no substantive litigation took place in this case until summary judgment).[8]

D.      Prejudgment Interest

Finally, Western seeks as part of its motion for summary judgment prejudgment interest in an amount exceeding $25,000. Per its brief,

> the prejudgment interest is calculated based on a principal amount of $97,000.00 (which is the amount Defendants have owed since March 29, 2023 when [Western] issued its demand to Defendants to hold [Western] harmless pursuant to an Indemnification Agreement), an interest rate of ten percent under California Civil Code § 3289(b),[9] and the time that has passed since March 29, 2023, until the time of drafting this motion.

Not. of Mot. at 2.

Similar to above, Defendants do not address prejudgment interest in their papers, presumably because the underlying principal is being disputed. In addition, the Court has additional concerns regarding the prejudgment interest.

- First, it is not clear that the $97,000 is a sum certain. *See* Cal. Civ. Code § 3287(a) ("A person who is entitled to recover *damages certain, or capable of being made certain by calculation*, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt.") (emphasis added). The $97,000 consists of the $85,000 that Western paid

---

[8] The Court acknowledges that the parties did engage in settlement discussions, including with Judge Cisneros.

[9] "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code § 3289(b).

18

to Ms. Koo, plus $12,000 that Western claims it incurred in attorneys' fees to defend against Ms. Koo's claim against the bond. Even if the $85,000 figure is a sum certain, attorneys' fees of $12,000 does not seem to qualify. *See Chesapeake Industries, Inc. v. Togova Enters., Inc.*, 149 Cal.App.3d 901, 906 (1983) ("[I]nterest traditionally has been denied on unliquidated claims because of the general equitable principle that a person who does not know what sum is owed cannot be in default for failure to pay. Thus, no prejudgment penalty is assessed against a litigant for failing to pay a sum which is unascertainable prior to judgment."); *Children's Hosp. & Med. Ctr. v. Bontá*, 97 Cal. App. 4th 740, 774 (2002) ("The test for recovery of prejudgment interest under [Civil Code] section 3287, subdivision (a) is whether defendant actually know[s] the amount owed or from reasonably available information could the defendant have computed that amount. The statute . . . does not authorize prejudgment interest where the amount of damage, as opposed to the determination of liability, depends upon a judicial determination based upon conflicting evidence and it is not ascertainable from truthful data supplied by the claimant to his debtor. Thus, where the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate.") (internal quotation marks omitted).

- Second, California Civil Code § 3287(b) does allow for prejudgment interest on unliquidated damages but, there, a court has more discretion. The statute provides: "Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed." Cal. Civ. Code § 3287(b).

- Third, discretion under § 3287(b) is arguably of particular importance in this case where there have been significant delays in litigation. Admittedly, much of this is attributable to Defendants but arguably a part is attributable to Western as well.

19

United States District Court
Northern District of California

### III.   CONCLUSION

For the foregoing reasons, the Court denies Western's motion for summary judgment. There are genuine disputes of material fact as to whether Western settled in good faith with Ms. Koo (*i.e.*, whether the $85,000 was a reasonable settlement), whether the attorneys' fees sought by Western are reasonable, and whether the prejudgment interest sought by Western is recoverable.

Furthermore, in light of the Court's analysis above, the Court directs the parties to meet and confer to determine whether they would benefit from a further settlement conference with Judge Cisneros (or another form of ADR). This case should, quite frankly, settle. Both parties bear risks, and it makes little sense for both parties to continue to incur additional attorneys' fees and costs. The need to settle is underscored by the substantial escalation of the amount in controversy. The parties shall report back on the results of their meet and confer within a week of the date of this order.

This order disposes of Docket No. 66.

**IT IS SO ORDERED**.

Dated: April 27, 2026

_____
EDWARD M. CHEN
United States District Judge

20